JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Albert J. Hornung, Jr., and Mary Lorayne Hornung, h/w

**(b)** County of Residence of First Listed Plaintiff: Lee County Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

John N. Zervanos, Esquire, Soloff & Zervanos, 1525 Locust St, 8th Flr, Phila, Pa. 19102 215-732-2260

## DEFENDANTS

Bruce A. Goodman, M.D., Bruce A. Goodman, M.D., PC and John Does 1-5

County of Residence of First Listed Defendant: Bucks County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [X] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. Section 1332(a)(1)

Brief description of cause:
Failure to Diagnose

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: November 12, 2026

SIGNATURE OF ATTORNEY OF RECORD: John N. Zervanos, Esquire

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

10/2024

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM

Place of Accident, Incident, or Transaction: 790 Newtown Yardley Road, Newtown, Pa. 18940

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

A. ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

B. ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☑ 6. Other Personal Injury (*Please specify*): Failure to Diagnose
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERT J. HORNUNG, JR. AND MARY LORAYNE HORNUNG (h/w)**<br>Plaintiffs<br>v.<br><br>**BRUCE A. GOODMAN, M.D., BRUCE A. GOODMAN, M.D., P.C. and JOHN DOES 1-5**<br>Defendants | : | Civil Action No.: |

**COMPLAINT – CIVIL ACTION**

Plaintiffs Albert J. Hornung and Mary Lorayne Hornung, by and through their undersigned attorneys, Soloff & Zervanos, P.C., do hereby file this Complaint and aver the following:

**PARTIES**

1. Plaintiff Albert J. Hornung is an adult citizen and resident of the State of Florida, and he resides at 14380 Riva Del Lago Drive, Fort Myers, FL 33907.

2. Plaintiff Mary Lorayne Hornung is an adult citizen and resident of the State of Florida, and she resides at 14380 Riva Del Lago Drive, Fort Myers, FL 33907.

3. Plaintiff Mary Lorayne Hornung is the lawful wife of Plaintiff Albert J. Hornung.

4. Defendant Bruce A. Goodman, M.D. (hereinafter also referred to as "Goodman") is a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, specializing in the field of internal medicine, and he practices medicine, maintains a professional office and/or maintains a place of business at 790 Newtown Yardley Road, Newtown, PA 18940. Plaintiffs are asserting a professional liability action against this Defendant healthcare provider.

5. Defendant Bruce A. Goodman, M.D., P.C. (hereinafter also referred to as "Goodman, P.C.") is a healthcare provider, healthcare organization, professional corporation,

professional partnership, professional association and/or other medical and/or business entity organized, licensed and existing under the laws of the Commonwealth of Pennsylvania, providing care and treatment to patients, with a place of business located at 790 Newtown Yardley Road, Newtown, PA 18940. Plaintiffs are asserting a professional liability action against this Defendant healthcare provider.

6. Defendant John Does 1-5 (hereinafter also referred to as "Does") are the designated names of unknown persons or unknown entities named herein in accordance with Fed. R. Civ. P. 15 and/or Pa. R.C.P. 2005. It is submitted that these Defendants are citizens of the Commonwealth of Pennsylvania. These designations are fictitious. The actual names are unknown to Plaintiffs despite a reasonable search with due diligence pre-suit to determine the actual names. As set forth more fully below in this Complaint, a factual description of these unknown Defendants is averred with sufficient particularity for identification. These designations include but are not limited to the legal and/or fictitious names of the medical practice located at 790 Newtown Yardley Road, Newtown, PA 18940 as they existed in 2023 as well as those individuals and/or entities who: (1) other than Defendant Goodman, provided or were supposed to provide care and treatment to Plaintiff Albert J. Hornung at the medical practice located at 790 Newtown Yardley Road, Newtown, PA 18940 in 2023; (2) other than Defendant Goodman, owned, operated, oversaw, managed, maintained and/or controlled the medical practice located at 790 Newtown Yardley Road, Newtown, PA 18940 in 2023; and (3) other than Defendant Goodman, P.C., employed and/or were vicariously liable for Defendant Goodman and/or those designated in (1) above in 2023. These Defendants will remain designated as Does until such time as Plaintiffs can properly identify the true names of these Defendants in accordance with Pa. R.C.P. 2005. Plaintiffs are asserting professional liability

actions against these Defendant healthcare providers.

7. At all times relevant hereto, Plaintiff Albert J. Hornung was provided medical and other healthcare services by Defendants. These healthcare provider Defendants were obliged to bring to bear the professional knowledge and care that they were required to possess and to pursue their professions in accordance with reasonably safe and accepted standards of medicine and institutional-based health care in general as well as their specialties in particular in treating Plaintiff Albert J. Hornung.

8. At all times relevant hereto, Defendants Goodman and/or Does were employees, servants, agents, ostensible agents, workmen and/or contractors of Defendants Goodman, Goodman, P.C. and/or Does.

9. At all times relevant hereto, Defendants Goodman and/or Does acted or failed to act within the course and scope of their employment, servitude, agency, ostensible agency, work, contract and/or agreement with Defendants Goodman, Goodman, P.C. and/or Does, while providing medical care and treatment to Plaintiff Albert J. Hornung.

10. Accordingly, Defendants Goodman, Goodman, P.C. and/or Does are vicariously liable for the negligent acts and omissions of Defendants Goodman and Does under the theories of vicarious liability, direct employment, respondeat superior, servitude, agency, ostensible agency, right of control and/or under a contract and/or agreement.

11. At all times relevant hereto, Defendants Goodman, Goodman, P.C. and/or Does also acted or failed to act by and through their presently unidentifiable employees, servants, agents, ostensible agents, workmen and/or contractors in the care and treatment of Plaintiff Albert J. Hornung, including other physicians, nurses, fellows, residents and medical, nursing, clerical, administrative, secretarial and ancillary staff, presently known to these Defendants and

unknown to Plaintiffs after reasonable investigation and prior to discovery, who were all acting within the course and scope of their employment, servitude, agency, ostensible agency, work and/or contract with Defendants Goodman, Goodman, P.C. and/or Does in the care and treatment of Plaintiff Albert J. Hornung.

12. Accordingly, Defendants Goodman, Goodman, P.C. and/or Does are liable for the negligent acts and omissions of these presently unidentifiable individuals under the theories of vicarious liability, direct employment, respondeat superior, servitude, agency, ostensible agency, right of control and/or contract.

13. For the presently unidentifiable individuals who were involved in the care and treatment of Plaintiff Albert J. Hornung who are noted in the records of Defendants, the names, signatures, initials and/or codes for these individuals are illegible and/or unidentifiable to Plaintiffs without the benefit of discovery.

**JURISDICTION**

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as Plaintiffs and Defendants are citizens of different states. Specifically, Plaintiffs are citizens of the State of Florida and Defendants are citizens of the Commonwealth of Pennsylvania.

15. The amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, against each Defendant, exclusive of interest, costs, attorney's fees and any other remedies as seen fit by this Court.

**VENUE**

16. All of the claims herein arose in Bucks County, Pennsylvania, within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and

involve Defendants who reside within and events that took place within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## OPERATIVE FACTS

17. Mr. Hornung had been a patient of Defendants since 2007.

18. On June 5, 2023, the results of a routine urinalysis for Mr. Hornung, a test which was ordered by Defendants, revealed abnormal findings of microscopic hematuria as follows:

| | |
|---|---|
| **Blood, Urine** | **Value: 2+** |
| **RBC, Urine** | **Value: 15-19** |
| **WBC, Urine** | **Value: 10-14** |

19. On June 23, 2023, Defendants coded the results of Mr. Hornung's urinalysis as asymptomatic microscopic hematuria.

20. On July 13, 2023, the results of a retroperitoneal ultrasound performed upon Mr. Hornung, a test which was ordered by Defendants, were found to be inconclusive.

21. In violation of the applicable standards of care, Defendants failed to order any additional work-up for Mr. Hornung's abnormal urinalysis.

22. In violation of the applicable standards of care, Defendants failed to order a CT Urogram for Mr. Hornung's abnormal urinalysis.

23. In violation of the applicable standards of care, Defendants failed to refer Mr. Hornung to a urologist for Mr. Hornung's abnormal urinalysis.

24. In violation of the applicable standards of care, Defendants failed to tell Mr. Hornung of the possible connection between microscopic hematuria and bladder cancer.

25. In early 2025, Plaintiffs received a letter from Defendant Goodman stating that he was transitioning his practice to "concierge medicine," which meant that Defendant Goodman's practice would be membership-based, and that his patients would pay an annual or monthly

retainer fee in exchange for enhanced access and personalized medical attention.

26. Mr. Hornung could not afford to pay for concierge medicine, and thus he was forced to seek out another primary care physician.

27. It took several months for Mr. Hornung to find another primary care physician in his area and/or who would take his health insurance coverage.

28. On July 1, 2025, Mr. Hornung began treating with Eric Radutman, M.D., of Penn Internal and Family Medicine.

29. Dr. Radutman ordered a routine urinalysis of Mr. Hornung, the results of which were abnormal, revealing microscopic hematuria.

30. These abnormal results prompted Dr. Radutman to order a CT Urogram and refer Mr. Hornung to a urologist.

31. On July 24, 2025, Mr. Hornung's CT Urogram identified a 19 mm/2 cm enhancing nodule in the anterior bladder wall, suspicious for neoplasm.

32. In August of 2025, cystoscopy and TURBT procedures revealed Stage II, high-grade muscle-invasive urothelial carcinoma (bladder cancer).

33. At no point prior to becoming a patient of Dr. Radutman did Mr. Hornung know or have reason to know that he had cancer because Defendants never advised him that he had cancer or that the blood in his urine required additional testing to determine whether he had cancer.

34. Accordingly, at all relevant times prior to becoming Dr. Radutman's patient, Mr. Hornung did not know that he had cancer, or that the blood in his urine was a sign or symptom associated with bladder cancer.

35. The negligence and carelessness of Defendants, individually, jointly and/or

severally, and by and through their employees, agents, ostensible agents, servants, workmen and contractors, proximately caused a catastrophic delay in the timely diagnosis and treatment of Mr. Hornung's bladder cancer, thereby preventing him from undergoing prompt and effective care to prevent the worsening and metastatic spread of his bladder cancer, which was present in June of 2023.

36. The delay in diagnosis and treatment of Mr. Hornung's bladder cancer increased the risk of harm to him, caused the spread of cancer to Stage II, and caused him to undergo extensive and radical surgeries, medication, treatment and therapies.

37. A timely diagnosis in 2023 of Mr. Hornung's bladder cancer would have significantly improved his survival rate, would have resulted in far less invasive surgeries, therapies and treatments and would have resulted in a much better chance of remission.

38. The delay in diagnosis and treatment of Mr. Hornung's bladder cancer was not due to any act or failure to act on the part of Mr. Hornung, who looked to and trusted Defendants for proper medical services, diagnosis, care and treatment.

**COUNT I - NEGLIGENCE**
**PLAINTIFFS v. ALL DEFENDANTS**

39. Plaintiffs incorporate all preceding paragraphs as if same were set forth herein.

40. The negligence and carelessness of Defendants Goodman, Goodman, P.C. and/or Does, individually, jointly and severally, and by and through their employees, servants, agents, ostensible agents, workmen and/or contractors, consisted of the following:

a. failing to timely and/or properly diagnose Mr. Hornung's bladder cancer;

b. failing to timely and/or properly treat Mr. Hornung's bladder cancer;

c. failing to timely and/or properly consult with or refer Mr. Hornung to a urologist for diagnosis, evaluation, testing, monitoring and/or treatment of his microscopic hematuria;

d. failing to timely and/or properly order additional urinalysis, radiology studies, blood testing and/or other diagnostic studies for Mr. Hornung for the diagnosis, evaluation, testing, monitoring and/or treatment of his microscopic hematuria;

e. failing to timely and/or properly order additional bladder testing and/or bladder evaluations, including a CT Urogram and/or cystoscopy for Mr. Hornung for the diagnosis, evaluation, testing, monitoring and/or treatment of his microscopic hematuria;

f. ordering only a retroperitoneal ultrasound for Mr. Hornung in response to his microscopic hematuria, the results of which were inconclusive and identified no cause of his microscopic hematuria;

g. failing to timely and/or properly view, review, interpret and/or follow-up on Mr. Hornung's June of 2023 urinalysis and/or July of 2023 retroperitoneal ultrasound;

h. failing to recognize that a retroperitoneal ultrasound provided no diagnostic value in identifying bladder cancer;

i. misreading, misinterpreting and/or misdiagnosing Mr. Hornung's June of 2023 urinalysis and/or July of 2023 retroperitoneal ultrasound;

j. failing to timely and/or properly diagnose and/or treat the cause and/or source of Mr. Hornung's microscopic hematuria;

k. failing to formulate a proper plan to diagnose, evaluate, test, monitor and/or treat Mr. Hornung's microscopic hematuria;

l. failing to consider possible bladder cancer as a diagnosis or part of a differential diagnosis for Mr. Hornung;

m. failing to timely and/or properly diagnose Mr. Hornung's cancerous bladder neoplasm and/or his metastatic spread of cancer;

n. failing to timely and/or properly treat Mr. Hornung's cancerous bladder neoplasm and/or his metastatic spread of cancer;

o. failing to take a timely and/or thorough history of Mr. Hornung;

p. failing to timely and/or properly conduct a physical examination of Mr. Hornung;

q. failing to take into consideration Mr. Hornung's history and/or physical

examinations in his diagnosis and/or treatment;

r. failing to timely and/or properly inform Mr. Hornung of the possible connection between microscopic hematuria and bladder cancer so that Mr. Hornung could get a second opinion and/or urology consult;

s. allowing Mr. Hornung's bladder cancer to develop, grow, worsen, spread and/or metastasize without timely and/or proper diagnosis and/or treatment;

t. causing Mr. Hornung to undergo extensive and radical surgery and treatments, including cystectomy and urinary diversion, leaving him without a bladder or a normally functioning urinary system;

u. depriving Mr. Hornung of the ability for a cure or treatment that could have prevented the development, growth, worsening, spread and/or metastasis and/or could have resulted in remission of his metastatic bladder cancer, thereby affecting his life expectancy;

v. causing a delay in the diagnosis and/or treatment of Mr. Hornung's bladder cancer and/or metastatic disease; and

w. increasing the risk of harm to Mr. Hornung by failing to timely and/or properly diagnose and/or treat his microscopic hematuria, bladder cancer and/or metastatic disease.

41. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has sustained injuries and damages, including the catastrophic development, spread, growth, worsening and/or metastasis of his bladder cancer and metastatic disease, which prevented him from undergoing prompt and effective care, and which has resulted in a number of related debilitating conditions and limitations, and which has caused and continues to cause him great pain and suffering and an increase of the risk of harm and death, and decreased his life expectancy, to his great detriment and loss.

42. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has sustained injuries and damages, including the development, spread, growth, worsening and metastasis of his bladder cancer and metastatic disease, which has

resulted in extensive, radical and disfiguring surgeries as well as continuing surgeries and other medical treatments and therapies, which will require monitoring for the remainder of his life, and which has caused and continues to cause him great pain and suffering and an increase of the risk of harm and death, and decreased his life expectancy, to his great detriment and loss.

43. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung was exposed to medication and treatment thereby risking his body to sources of toxicity that would not have been necessary with an earlier diagnosis, thereby subjecting him to other illnesses, conditions and/or diseases and which has caused and continues to cause him great pain and suffering and an increase of the risk of harm and death, and decreased his life expectancy, to his great detriment and loss.

44. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has been and continues to be unable to perform or has been severely limited in performing many of his normal activities, all to his great detriment and loss.

45. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has suffered and continues to suffer loss of past employment and wages, and his earning capacity has been impaired, all to his great detriment and loss.

46. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has been and continues to be forced to incur various financial, medical and surgical expenses in an effort to cure himself from his injuries and damages, all to his great detriment and loss.

47. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Albert J. Hornung has experienced and continues to experience chronic mental, emotional and physical pain, suffering, inconvenience, embarrassment, humiliation, scarring,

disfigurement, mental anguish, fear, anxiety, depression and loss of enjoyment of life, all to his great detriment and loss.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against Defendants, individually, jointly and severally, in an amount in excess of the statutory arbitration limits against each of them, for any and all damages compensable under Pennsylvania law, exclusive of pre-judgment interest, post-judgment interest, delay damages and costs.

## COUNT II - LOSS OF CONSORTIUM
## PLAINTIFFS v. ALL DEFENDANTS

48. Plaintiffs incorporate all preceding paragraphs as if same were set forth herein.

49. As a direct and proximate result of the negligence and carelessness of Defendants, individually, jointly and/or by and through their employees, agents, servants, ostensible agents, workmen, and/or contractors, Plaintiff Mary Lorayne Hornung has lost and has been deprived of the services, society, companionship and consortium of her lawful husband, Plaintiff Albert J. Hornung.

50. As a direct and proximate result of the negligence and carelessness of Defendants, individually, jointly and/or by and through their employees, agents, servants, ostensible agents, workmen, and/or contractors, Plaintiff Mary Lorayne Hornung hereby claims the full measure of damages allowable under Pennsylvania law for the loss of services, society, companionship and consortium of her lawful husband, Plaintiff Albert J. Hornung.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against Defendants, individually, jointly and severally, in an amount in excess of the statutory arbitration limits against each of them, for any and all damages compensable under Pennsylvania law, exclusive of pre-judgment interest, post-judgment interest, delay damages and costs.

## JURY DEMAND

Please take notice that Plaintiffs demand a trial by jury as to all issues in the above matter.

Respectfully submitted,

**SOLOFF & ZERVANOS, P.C.**

/s/John N. Zervanos, Esquire

**BY:**________________________________

**JOHN N. ZERVANOS, ESQUIRE**
PA Attorney I.D. No.: 49615
Email: jzervanos@lawsz.com
**JOHN M. PUMPHREY, ESQUIRE**
PA Attorney I.D. No.: 79539
Email: jpumphrey@lawsz.com
Address: 1525 Locust Street, 8th Floor
Philadelphia, PA 19102
Phone: 215-732-2260
**Attorneys for Plaintiffs**
**Albert J. Hornung and**
**Mary Lorayne Hornung**

DATE: November 12, 2026